60231. SIMMS et al. v. CAMP CONCRETE COMPANY et al.

Smith, Judge.

Appellants, Mr. and Mrs. W. W. Simms, brought this action against Camp Concrete Company, Jesse Dudley and Robert Britton seeking damages for injuries incurred in a motor vehicle collision. Appellants appeal the denial of their motions for new trial and enumerate as error the trial court's charge on accident, the court's refusal to admit appellees' prior pleadings into evidence, the court's failure to give a requested charge on burden of proof and the verdict as contrary to law and to the evidence. We reverse.

The collision occurred on February 6, 1977 on the southbound side of the Lindsey Creek Bypass, a four-lane limited access highway in Columbus, Georgia. Just over the hill where the Bypass crosses over Morris Road, appellee Britton had pulled his pickup truck onto the emergency lane on the right in order to resecure some furniture in the truck bed. Shortly thereafter, John King came over the Morris

Road overpass driving a Chevrolet Vega stationwagon and moving at approximately 50 m.p.h. He and his wife observed the driver putting his left foot into the cab of the pickup; they also noticed that a piece of furniture blocked the pickup's rear window. They then observed the pickup move ten to fifteen feet along the emergency lane before merging into the right traffic lane at about 30 m.p.h. At this point Mr. King removed his foot from the accelerator and, approximately one or two seconds later, engaged the brakes. The Kings also observed that the pickup was moving very slowly and did not appear to be accelerating. Mr. King then moved his stationwagon into the left lane after he had checked that lane for traffic. He observed a gold Chrysler (later identified as appellants' vehicle) approximately six to seven car lengths behind him followed by a Mack truck later identified as being owned by Camp and being driven by Dudley). As Mr. King moved into the left lane, his Vega was only a few feet from the pickup.

Britton and his passenger disputed several of the Kings' observations. They testified that Britton, the driver, did not get out of the pickup; that the furniture did not block the pickup's rear window; that they traveled 75 to 80 feet in the emergency lane in order to pick up speed before merging into traffic; and that the pickup had accelerated to at least 40 m.p.h. before pulling back into the right traffic lane. Britton also testified that his turn signal was turned on as he pulled into traffic.

As appellants crested the Morris Road overpass, Mr. Simms testified that he saw the Vega's brake lights; he then removed his foot from the accelerator to the brake. He had been moving at about 50 m.p.h. As the Vega moved into the left lane, Mr. Simms observed for the first time the pickup truck halfway into the right lane and "staring me right in the face." During the time between which he first observed the Vega's brake lights and the Vega's beginning to move left, Mr. Simms testified that he might have closed the distance somewhat between his vehicle and the Vega. Neither appellant observed a directional signal in operation on the pickup. Mr. Simms then applied his brakes hard to avoid hitting the pickup. Appellants assert that the Chrysler never skidded or moved out of the right lane. Almost immediately thereafter, the Chrysler was "clobbered" in the rear by the Mack truck and spun around the road. Mr. Simms testified that events happened so quickly that he never had time to see if the way were clear to his left.

Dudley was driving the Mack truck "bobtail," i.e., without a trailer unit. As he topped the Morris Road overpass, also traveling at 50 m.p.h., he saw the brake lights on the Chrysler come on and the back tires begin to smoke; he was approximately four car lengths behind the Chrysler at that time. Dudley hit the brakes and turned

into the left lane; he locked the brakes and the truck began to skid. Dudley testified that the Chrysler then began to fishtail into the left lane, so he turned the truck back to the right. The left front of the truck then collided with the left rear portion of the Chrysler at an angle and raked across the rear of the automobile causing it to spin; at the point of impact, the front of the truck was in the right lane and the back was still in the left lane. A police officer later estimated the point of impact to have been just inside the left lane. Britton also testified that the collision occurred in the left lane. Dudley testified that he was in control of the truck at all times and that there was nothing else he could have done to avoid the collision.

As the Vega entered the left lane, Mrs. King heard tires screeching to her rear and turned around. She observed the Chrysler going toward the right emergency lane and the Mack truck in the center of the road. Both vehicles appeared to be braking. She observed the left front of the truck collide with the right rear of the Chrysler. At the point of impact, the truck was in the center of the road; it pulled back into the right lane immediately following impact. Through the rear view mirror Mr. King observed the Chrysler head toward the emergency lane and the truck in the left lane with its back tires bouncing and smoking; he did not see the impact.

In their complaint appellants asserted that Britton entered the right lane immediately in front of their automobile, creating a sudden emergency which necessitated Mr. Simms slamming on his brakes. They further asserted that Dudley was following too closely and at a high rate of speed. Appellees responded by denying any negligence on their part and suggesting that the proximate cause of the collision was appellants' own negligence combined with the negligence of an unnamed third person or persons.

1. Appellants contend that the trial court erred in charging the jury on the doctrine of accident; they argue that neither the pleadings nor the evidence support such a charge. Appellees counter that King, who was not a party to this case, could have caused the collision by negligently failing to adequately warn traffic behind him as to a slowly moving vehicle ahead and by negligently waiting until the last possible moment to move from the right to the left lane thereby leaving those behind him in an emergency situation.

"An accident, in a strict legal sense, as applied to negligence cases, refers to an event which is not proximately caused by negligence, but instead arises from an unforeseen or unexplained cause. But it is also often used to indicate a happening which, although not wholly free from negligence by some person, was not proximately caused by a failure of either of the parties to a case to exercise ordinary care in the situation." *Baggett v. Jackson,* 79 Ga.

App. 460 (1) (54 SE2d 146) (1940). When King observed the pickup truck begin to move, he took his foot off the accelerator. When he became aware (no more than two second later) that the pickup was not accelerating as quickly as he had anticipated, King applied the brakes, checked his mirrors to determine the position of traffic behind him, and moved into the left lane. There was no evidence to suggest that the Vega was sufficiently large so as to conceal the pickup from the view of those vehicles behind the Kings. Nor is there anything in King's behavior to suggest that he acted in a negligent manner. "The evidence presents no theory of how the collision occurred other than the failure of either the appellant [Mr. Simms] or the [appellees], or both, to exercise due care." *Cohran v. Douglasville Concrete Products,* 153 Ga. App. 8, 9 (264 SE2d 507) (1980).

As Mr. Simms crested the hill, he saw the Vega some distance ahead with its brake lights on. Thus, even assuming King had a duty to engage his brakes earlier than he did in order to alert traffic behind him, his failure to do so was of no consequence in relation to the collision. See *Green v. Knight,* 153 Ga. App. 183 (2) (264 SE2d 657) (1980).

"Since there was no evidence that the collision was an 'unintended occurrence which could not have been prevented by the exercise of reasonable care' [Cit.], and the evidence shows, rather, that the collision and resulting injuries were due to the negligence of appellant [Mr. Simms], or of the [appellees], or to both, it was error to charge on 'accident.' *Henson v. Putnam,* 123 Ga. App. 254 (1) (180 SE2d 269) (1971). 'There was no evidence from which the jury could have found that the collision was an unavoidable accident. Somebody must have been at fault, and the question for the jury to determine was, who was guilty of negligence; and they should have been permitted to go directly into that question, without having their attention distracted by the consideration of the impossible theory that the (injury complained of) was the result of an accident.' *Atlantic C. L. R. Co. v. Jones,* 132 Ga. 189, 196 (63 SE 834) (1909). See also *Morrow v. Southeastern Stages,* 68 Ga. App. 142 (22 SE2d 336) (1942). The evidence not supporting the charge on 'accident,' that the appellee[s] plead[ed] it as a defense does not require a contrary result." *Cohran v. Douglasville Concrete Products,* supra at 10. Accord, *Fabian v. Vincent,* 155 Ga. App. 464 (2) (270 SE2d 858) (1980).

2. The remaining enumerations of error are without merit.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

ARGUED JULY 1, 1980 — DECIDED NOVEMBER 13, 1980 —
REHEARING DENIED DECEMBER 9, 1980 —

*Kenneth M. Henson, Jr.,* for appellants.

*William Scrantom, Joel Wooten, Ed Kelly, Max R. McGlamry,* for appellees.