A01A0823. STEWART v. BOURN et al.
(552 SE2d 450)

MIKELL, Judge.

John Daniel Stewart appeals the trial court's denial of his summary judgment motion in the declaratory action he filed to determine the appropriate distribution of settlement proceeds from a wrongful death case. The issue presented is one of first impression in this state: when a decedent is survived only by siblings and the children of deceased siblings, are the surviving siblings the only "next of kin" under OCGA § 51-4-5 (a), or should the settlement proceeds be dis-

tributed in accordance with the statute of descent and distribution.[1] For the reasons stated below, we hold that the "next of kin" entitled to recover under OCGA § 51-4-5 (a) should be determined based upon the laws of descent and distribution, and the proceeds should be distributed in accordance therewith. Therefore, we affirm the judgment.

The facts are undisputed. Susie Fair, one of seven siblings, was killed in an automobile accident on November 7, 1993. Fair was not survived by a spouse, child, or parent, but was survived only by four siblings and the three children of the two siblings who predeceased her. The parties stipulated that all of these persons were the decedent's heirs at law under OCGA § 53-4-2 (5).[2]

Stewart, one of the four surviving siblings, is the executor of the decedent's estate. In that capacity, he brought a wrongful death action against the driver of the other automobile. Stewart settled the action for $525,000. After he paid the legal fees and other costs, $338,000.04 remained for distribution. Stewart divided the sum into six equal shares and distributed one share to each surviving sibling,[3] including himself. Stewart filed a declaratory action to determine which heirs should receive the remaining two shares.

In his motion for summary judgment, Stewart argued that "next of kin" as utilized in OCGA § 51-4-5 (a) includes only the decedent's surviving siblings. The trial court denied Stewart's motion and ordered the distribution of one of the remaining shares equally to Patricia Ann Bourn and Lisa Allen Clancy, the children of one of Fair's deceased siblings, and the other share to William O. Johnson, Jr., the son of Fair's other deceased sibling. Stewart appeals.

1. In 1846, the British Parliament enacted Lord Campbell's Act, which created a statutory cause of action for wrongful death.[4] Prior to then, there was no common law or statutory cause of action that

---

[1] At the time of the decedent's death, the law of descent and distribution was codified at OCGA § 53-4-2. The statute has since been revised and is now codified at OCGA § 53-2-1.

[2] This statute provided in relevant part: "The children or grandchildren of deceased brothers and sisters shall represent and stand in the place of their deceased parents, but there shall be no representation further than this among collaterals." OCGA § 53-4-2 (5), repealed by Ga. L. 1996, p. 504, § 10.

[3] One of the siblings died after the decedent, so that share was distributed to that sibling's estate.

[4] *Thompson v. Watson*, 186 Ga. 396, 397 (197 SE 774) (1938); Eldridge's Ga. Wrongful Death Actions (3rd ed.), § 1-3. Lord Campbell's Act read as follows:

"Whenever the death of any person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

Id.

arose from the death of another.[5] In 1850, Georgia patterned its first wrongful death statute after Lord Campbell's Act.[6] In 1933, the Georgia legislature enacted Code Ann. § 105-1309, which "created and established a new property cause of action in favor of the next of kin of the deceased, which had not previously existed."[7] It provided:

> In cases where there is no person entitled to sue under the foregoing provisions of this Chapter, the administrator or executor of the decedent may sue for and recover and hold the amount recovered for the benefit of the next of kin, if dependent upon the decedent, or to whose support the decedent contributed. In any such case the amount of the recovery shall be determined by the extent of the dependency or the pecuniary loss sustained by the next of kin.[8]

In 1969, an amendment to the statute eliminated the dependency requirement as to the right and amount of recovery.[9] The amended Code Ann. § 105-1309 provided: "[I]n cases where there is no person entitled to sue under the foregoing provisions of this Chapter, the administrator or executor of the decedent may sue for and recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent."[10] The statute was redesignated as OCGA § 51-4-5 (a) in 1981, but the content remained virtually unchanged.[11]

---

[5] *South-Western R. Co. v. Paulk,* 24 Ga. 356, 362 (1858).

[6] *Walden v. Coleman,* 217 Ga. 599, 600 (124 SE2d 265) (1962). The first act read as follows:
> In all cases hereafter where death shall ensue from or under circumstances which would entitle the deceased, if death had not ensued, to an action against the perpetrator of the injury, the legal representative of such deceased shall be entitled to have and maintain an action at law against the person committing the act from which the death resulted — one half of the recovery to be paid to the wife and children, or the husband of the deceased, if any, in case of his or her estate being insolvent.

Eldridge's Ga. Wrongful Death Actions (3rd ed.), § 1-4. The statute has been amended several times. Both *Thompson,* supra, and *Walden,* supra, outline the development of the statute.

[7] (Emphasis omitted.) *Patellis v. King,* 52 Ga. App. 118, 120 (182 SE 808) (1935).

[8] (Punctuation omitted.) *Montgomery v. Southern R. Co.,* 78 Ga. App. 370, 375 (2) (51 SE2d 66) (1948).

[9] *Miller v. Tuten,* 137 Ga. App. 188, 189, n. 1 (223 SE2d 237) (1976).

[10] (Citation and punctuation omitted.) *DeLoach v. Floyd,* 160 Ga. App. 728, 729 (2) (288 SE2d 65) (1981).

[11] OCGA § 51-4-5 (a) provides
> When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent.

2. In this case, we are asked to construe the term "next of kin" as it is utilized in OCGA § 51-4-5 (a). In doing so, we must comply with the following, recent directive from the Supreme Court:

> Being in derogation of common law, the scope of the Wrongful Death Act must be limited in strict accordance with the statutory language used therein, and such language can never be extended beyond its plain and ordinary meaning. The express language of the Act will be followed literally and no exceptions to the requirements of the Act will be read into the statute by the courts.[12]

In interpreting statutes, we seek to determine the legislature's intent.[13] However, our inquiry must also include an examination of the courts' interpretation of the statute because

> [t]he applicable rules of statutory construction provide that once the court interprets the statute, the interpretation has become an integral part of the statute. This having been done, (over a long period of history) any subsequent "reinterpretation" would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute.[14]

We discussed the meaning of "next of kin" as it was utilized in Code Ann. § 105-1309 in *Jackson v. Central &c. R. Co.*[15] We held that "the expression 'next of kin' needs no construction. It means what it says, the 'next of kin,' as against all others not entitled to sue under the Code §§ 105-1306 and 105-1307."[16] Appellant argues that this language supports his contention that the "next of kin" does not include the appellees. A closer review of *Jackson*, however, warrants the contrary result.

Similar to this case, the decedent in *Jackson* was not survived by a spouse, parent, or child. The question on appeal was whether the next of kin was the decedent's aunt, who was dependent upon the

---

[12] (Punctuation and footnotes omitted.) *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999).

[13] See OCGA § 1-3-1 (a); *Givens v. Ichauway, Inc.*, 268 Ga. 710, 718 (3) (493 SE2d 148) (1997) (Fletcher, P. J., dissenting).

[14] (Citations and punctuation omitted.) *Abernathy v. City of Albany*, 269 Ga. 88, 89 (495 SE2d 13) (1998).

[15] 86 Ga. App. 557 (71 SE2d 899) (1952).

[16] Id. at 559. Code Ann. § 105-1306 provided that a husband and/or child shall recover for the wrongful death of a wife. *Walden*, supra at 601. Code Ann. § 105-1307 provided that a husband and/or wife shall recover for the wrongful death of a child. *Garden City Cab Co. v. Ransom*, 86 Ga. App. 247, 250 (1) (71 SE2d 443) (1952).

decedent, the decedent's brother of full blood, or her half-brother.[17] To determine the decedent's next of kin in *Jackson*, we utilized Code Ann. § 113-903, the statute of descent and distribution in existence at that time. We held that as against the decedent's aunt, the brother of full blood was the decedent's next of kin because under the statute, he stood in the second degree from the decedent.[18] In this case, the children of the siblings who predeceased the decedent stand in the place of their deceased parents.[19] Thus, like the surviving siblings, they stand in the second degree from the decedent.[20] Therefore, we agree with the trial court that one of the remaining shares should be distributed equally to Bourn and Clancy and the other share to Johnson.

Although we reach the conclusion urged by appellees, we reject their argument that when the Supreme Court treated the terms "next of kin" and "heirs at law" as equivalent in *Butts v. Trust Co. of Ga.*[21] and *Gresham v. Gannon*,[22] its interpretation became a part of OCGA § 51-4-5 (a). Neither *Butts* nor *Gresham* involved the construction of OCGA § 51-4-5 (a) or any of its predecessors. Furthermore, both cases involved will interpretation, which requires the application of rules of construction different from those involved in statutory construction.[23]

To construe this statute, OCGA § 51-4-5 (a), we follow the example of our decision in *Jackson*,[24] and again look to the law of descent and distribution. Fair died in 1993, before the substantial changes to our probate code in 1996 and 1997. Under the scheme of descent and distribution in effect in 1993, siblings of a decedent stood in the second degree for purposes of calculating priority of interest in an intestate's estate.[25] After the major revisions of the probate code, effective January 1, 1998, siblings of an intestate are in the third degree.[26] But under the former law, as under present law, the children of deceased siblings, i.e., the nieces and nephews of the decedent, would take per stirpes the share to which their parent would have been entitled.

Like the trial court, we see no reason not to apply the law of

---

[17] This case was decided before the dependency requirement was eliminated from Code Ann. § 105-1309 and before half-siblings were considered equally with the whole-blood.

[18] *Jackson*, supra at 560.

[19] See former OCGA § 53-4-2 (5), which was applicable at the time of the decedent's death.

[20] See id.

[21] 209 Ga. 787 (75 SE2d 745) (1953).

[22] 243 Ga. 269 (253 SE2d 748) (1979).

[23] In will construction, courts look to the interpretation which carries out the provisions of the statute of distribution. *Butts*, supra at 790.

[24] Supra.

[25] See former OCGA § 53-4-2 (5).

[26] See OCGA § 53-2-1 (b) (5).

descent and distribution to the interpretation of OCGA § 51-4-5 (a), and we therefore agree with the trial court that the two remaining shares should be distributed per stirpes to the nieces and nephew. Though the decisions of courts in other states do not bind this court, we note that several states utilize their laws of descent and distribution to determine the beneficiaries in wrongful death actions.[27] Further, this interpretation of OCGA § 51-4-5 (a) comports with Georgia's longstanding practice of allowing representation by children of deceased siblings. Indeed, the legislative trend is to broaden representation. Prior to 1998, the statute of descent and distribution specified that "[t]he children or grandchildren of deceased brothers and sisters shall represent and stand in the place of their deceased parents, *but there shall be no representation further than this among collaterals.*"[28] The statute in effect since 1998 omits the emphasized restrictions and broadly extends representation to all "descendants" of the deceased sibling.[29] Our holding is in harmony with the legislature's intent when it added the contested section to the Wrongful Death Act in 1933, with our prior decision in *Jackson*, and with the command of our Supreme Court that "all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and . . . their meaning and effect will be determined . . . with reference to other statutes and the decisions of the courts."[30]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JULY 6, 2001 —
RECONSIDERATION DENIED JULY 26, 2001 —

*Chambers, Chambers & Chambers, Timothy D. Chambers*, for appellant.

*Spears & Spears, John W. Spears, Jr., Malane T. Spears, Kanes & Benator, Panos J. Kanes*, for appellees.

---

[27] See *Reiser v. United States*, 786 FSupp. 1334 (N.D. Ill. 1992); *Ellis v. Sill*, 190 Kan. 300 (374 P2d 213) (1962); *Wynkoop v. Carpenter*, 574 NW2d 422 (Minn. 1998); *Silva v. Gulf Oil Corp.*, 1958 OK 2 (320 P2d 711) (1958); *Harding v. DeAngelis*, 39 Mass. App. Ct. 455 (657 NE2d 758) (1995).

[28] (Emphasis supplied.) Former OCGA § 53-4-2 (5).

[29] See OCGA § 53-2-1 (b) (5); see generally Unif. Prob. Code §§ 2-103 (1); 2-106 (b).

[30] (Citation and punctuation omitted.) *Atlanta Cas. Co. v. Jones*, 247 Ga. 238, 239-240 (1) (275 SE2d 328) (1981).